UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGEA L. PRESSLEY,

     Plaintiff,

v.

NANCY A. BERRYHILL,

     Defendant.

Case No. C17-5825JLR

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

## I. INTRODUCTION

Plaintiff Georgea L. Pressley seeks review of the denial of her application for supplemental security income and disability insurance benefits. (*See* Complaint (Dkt. # 1).) Ms. Pressley contends that the Administrative Law Judge ("ALJ") erred by (1) failing to find her degenerative joint disease of the knees a severe impairment at step two of the disability evaluation process; (2) improperly rejecting the opinions of Monica Carillo, M.D. regarding standing and walking limitations, as well as knee pain and limitations; (3) improperly rejecting Ms. Pressley's testimony at her most recent hearing[1];

---

[1] Ms. Pressley did not explicitly identify this as an issue at the beginning of her opening brief, but both sides briefed the issue, and thus the court will address it. (*See* Pl. Op. Br. (Dkt. # 11) at 1, 12; Def. Resp. Br. (Dkt. # 12) at 11-14; Pl. Reply Br. (Dkt. # 13) at 7-8.)

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

and (4) incorrectly assessing Ms. Pressley's residual functional capacity ("RFC") and ability to perform past work. (Pl. Op. Br. at 1, 12.) As discussed below, the court AFFIRMS the final decision of Defendant Nancy A. Berryhill (the "Commissioner") and DISMISSES the case with prejudice.

## II. BACKGROUND

### A. Procedural History

This is the third time this case is before the court. Ms. Pressley originally filed for disability benefits on October 17, 2007, alleging that her disability began on February 1, 2006. (*See* Admin. Record ("AR") (Dkt. # 9) at 68-69, 145.) Her claims were denied initially and on reconsideration in 2008. (*Id.* at 68-71.) ALJ John Bauer conducted a hearing on January 14, 2010. (*Id.* at 29.) On February 18, 2010, ALJ Bauer issued a decision denying Ms. Pressley benefits. (*Id.* at 22.) The Appeals Council denied review. (*Id.* at 1-5.)

On August 16, 2011, Chief Magistrate Judge Brian Tsuchida issued a report and recommendation ("R&R") reversing ALJ Bauer's decision and remanding the matter with directions to the ALJ to reassess Ms. Pressley's severe impairments; reassess the medical opinions of Dr. Monica Carillo, M.D., Dr. Susan Hakeman, M.D., and the state agency medical consultants; reevaluate Ms. Pressley's credibility; and redo the five-step disability evaluation process as necessary. (*Id.* at 682-98.)[2] Chief Judge Ricardo

---

[2] Chief Magistrate Judge Tsuchida's R&R is also available at *Pressley v. Astrue*, No. C10-2007-RSM-BAT, 2011 WL 4437183 (W.D. Wash. Aug. 16, 2011).

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 2

Martinez adopted the R&R on September 23, 2011. (*Id.* at 681.)[3]

Following remand, ALJ Larry Kennedy conducted a hearing on May 9, 2012. (*Id.* at 564.) On August 29, 2012, ALJ Kennedy issued a decision once again denying Ms. Pressley benefits. (*Id.* at 550.)

On July 15, 2014, Judge Marsha Pechman issued an order, based on an R&R from Magistrate Judge Tsuchida, once again reversing the ALJ's decision. (*Id.* at 1484-1504.)[4] This time, the court held that the ALJ erred (1) in failing to discuss whether Ms. Pressley's knee arthritis was a severe impairment at step two; and (2) in failing to discuss Dr. Carillo's January 2012 opinion. (*Id.* at 1488-91, 1500-01.) But the court determined that the ALJ did not err (1) in finding that Ms. Pressley's hand impairment was not a severe impairment at step two; (2) in finding that Ms. Pressley was not fully credible; (3) in rejecting Dr. Carillo's January 2010 and 2011 opinions; and (4) in rejecting Dr. Hakeman's opinions. (*Id.* at 1488-1503.) The court ordered the ALJ on remand to "consider whether Ms. Pressley has a severe impairment of degenerative joint disease affecting her knees, reevaluate Dr. Carillo's January 11, 2012 report . . . and, as necessary, reevaluate the medical opinion evidence of record." (*Id.* at 1503.)

ALJ Kennedy conducted the most recent hearing on June 8, 2015. (*Id.* at 1363.) On February 3, 2016, ALJ Kennedy issued a decision again denying Ms. Pressley

---

[3] Chief Judge Martinez's order is also available at *Pressley v. Astrue*, No. C10-2007-RSM, 2011 WL 4439552 (W.D. Wash. Sept. 23, 2011).

[4] Judge Pechman's order is also available at *Pressley v. Colvin*, No. C13-1833-MJP-BAT, 2014 WL 3534066 (W.D. Wash. July 15, 2014).

benefits. (*Id.* at 1348.)

B. **The ALJ's Decision**

Utilizing the five-step disability evaluation process,[5] the ALJ found:

**Step one:** Ms. Pressley has not engaged in substantial gainful activity since February 1, 2006, the alleged onset date.

**Step two:** Ms. Pressley has the following severe impairments: lumbar spine degenerative disc disease; obesity; mild degenerative changes of the left hand; hypertension; hyperthyroidism; reactive depression; and anxiety disorder.

**Step three:** Ms. Pressley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926.

**Residual Functional Capacity:** Ms. Pressley can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she can occasionally balance, stoop, kneel and crouch; never climb scaffolds, ropes, ladders, ramps, or stairs; and can never crawl. She is able to perform frequent fingering with the left hand. She must avoid concentrated exposure to vibrations and hazards such as unenclosed and unprotected heights. She can perform simple, routine tasks, and follow short, simple instructions, and can do work that involves little or no judgment. She has an average ability to perform sustained work activities within customary tolerances regarding sick leave and absences. She can have occasional interactions with coworkers and supervisors, but not in a cooperative or team effort. She can have incidental contact only with the general public.

**Step four:** Ms. Pressley is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by her residual functional capacity.

(AR at 1334-48.) Ms. Pressley filed written exceptions to the ALJ's decision with the Appeals Council. (*Id.* at 1322-28.) The Appeals Council declined jurisdiction on October 24, 2016, rendering ALJ Kennedy's decision final. (*See id.* at 1315.)

---

[5] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 4

## III. DISCUSSION

Ms. Pressley, as the claimant, bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### A. Degenerative Joint Disease of the Knees as a Severe Impairment

Ms. Pressley contends that the ALJ erred at step two of the disability evaluation process in failing to find that her degenerative joint disease of the knees was a severe impairment. (Pl. Op. Br. at 1.) The step-two inquiry is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims."). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c). As long as the claimant has at least one severe

impairment, the disability inquiry moves on to step three. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). The step-two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49. At the RFC phase, the ALJ must consider the claimant's limitations from all impairments, including those that are not severe. *Id.* at 1049. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis omitted).

Ms. Pressley raised this issue the last time she was before the court. (*See* AR at 1491.) There, the court held that the ALJ erred because he "failed to discuss Ms. Pressley's knee arthritis at step two." (*Id.*) The key issue there was that the ALJ failed entirely to discuss degenerative joint disease of the knees at step two, and he did not consider any limitations from that impairment in the RFC. (*See* AR at 1491.) The ALJ thus erred, and the error was harmful because he failed to consider the impairment in formulating the RFC. (*Id.*)

Here, by contrast, the ALJ discussed Ms. Pressley's degenerative joint disease of the knees, and found it to be a medically established impairment, but not one that is severe. (AR at 1336.) He reviewed the medical evidence regarding that condition, and included postural limitations in the RFC relevant to Ms. Pressley's knee condition. (*See id.* at 1336, 1338.) Thus, even if the ALJ erred in failing to find Ms. Pressley's degenerative joint disease to be a severe impairment, the error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless error where the ALJ failed

to include bursitis as a severe impairment at step two because "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at step [four]").

B.   **Evaluation of Dr. Carillo's January 2012 Opinion**

Ms. Pressley next contends that the ALJ erred in rejecting Dr. Carillo's January 2012 opinion[6] regarding Ms. Pressley's standing and walking limitations, and specific statements about her knee pain and limitations. (Pl. Op. Br. at 1.) Much of Dr. Carillo's 2012 opinion focused on Ms. Pressley's claimed back pain, which Dr. Carillo diagnosed as lumbago. (*See* AR at 1260-61.) Dr. Carillo opined that Ms. Pressley's mid and low back pain was "exacerbated by weight bearing, lifting, bending and straining," but that her "[s]ymptoms [were] relieved by [her] exercise regimen." (*Id.* at 1260.) As to Ms. Pressley's knees, Dr. Carillo noted that the right knee showed normal deep tendon reflexes, normal coordination, normal strength, and no swelling or edema. (*Id.* at 1261.) However, Ms. Pressley's knees had severely reduced range of motion in flexion and hyperextension, severely reduced stability, and—contrary to Dr. Carillo's previous statement—"severe reduction of right knee strength." (*Id.*) Dr. Carillo did not identify any limitations specific to Ms. Pressley's knee issues, although she did state that Ms. Pressley was "unable to lift more than [five pounds] at a time," and unable to "carry more than [two pounds] for any extended period of time." (*See id.*)

The ALJ gave three reasons for rejecting Dr. Carillo's January 2012 opinion.

---

[6] The court previously upheld the ALJ's rejection of Dr. Carillo's opinions from 2010 and 2011, and thus will not revisit those determinations. (*See* AR at 1495-1500.)

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 7

First, Dr. Carillo's records "do not appear to show contemporaneous physical exam findings, but rather a mere recitation of prior records." (AR at 1344.) Second, "over the longitudinal period, [Ms. Pressley] did not exhibit the severity of deficits implicated [in Dr. Carillo's 2012 opinion]." (*Id.*) In particular, Dr. Carillo's opinion was contradicted by the opinions and findings of examining doctors Thomas Calderon, M.D., Mark Heilbrunn, M.D., and Andrea Marshall, D.O. (*Id.* (citing *id.* at 280-83, 324-30, 1820-31).) Third, Dr. Carillo's 2012 opinion was contradicted by Ms. Pressley's reported activities, such as "going to [the] gym, lifting weights, doing cardio and eating healthy foods." (*Id.* at 1344.) The court addresses each reason in turn.

1. <u>Lack of Contemporaneous Physical Findings</u>

The ALJ's first reason for rejecting Dr. Carillo's 2012 opinion is not valid. The ALJ's determination appears to stem from the fact that Dr. Carillo's 2012 opinion uses the exact same language as her prior medical records regarding examination of Ms. Pressley's knees. (*Compare id.* at 1261, *with id.* at 1203, 1207-08, 1211, 1214.) However, that alone is not a basis for determining that Dr. Carillo failed to make physical findings at the time of her 2012 opinion. If Ms. Pressley's knee condition remained the same, there was no reason for Dr. Carillo to create new language to document that condition. (*See id.* at 1499.) The ALJ's assumption that Dr. Carillo did not make physical findings at the time of her 2012 opinion is not supported by substantial evidence in the record, and thus the ALJ erred in rejecting her 2012 opinion on this basis.

///

2. <u>Contradiction by Longitudinal Medical Evidence</u>

The ALJ's second reason for rejecting Dr. Carillo's 2012 opinion is sufficiently specific and legitimate. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a treating physician's opinion may properly be rejected where it is contradicted by other medical evidence in the record). The ALJ pointed to the findings from three examining physicians, all of which indicated that Ms. Pressley's knee condition was not as severe as Dr. Carillo found.

Dr. Calderon examined Ms. Pressley on September 13, 2007. (*See* AR at 283, 347.)[7] He noted that Ms. Pressley denied paraesthesias in her lower extremities, and had full motor strength with flexion and extension against resistance in her knees. (*Id.* at 347.) Dr. Calderon indicated that Ms. Pressley was "within normal limits" regarding her hips and lower extremities, as well as her gait and station. (*Id.* at 281.) He therefore concluded that Ms. Pressley could perform medium work, and that she "does not appear to have any musculoskeletal problems that would limit her from returning to work." (*Id.* at 282, 347.)

Dr. Heilbrunn examined Ms. Pressley on March 13, 2008. (*Id.* at 324.) He reported that Ms. Pressley was able to take daily walks, negotiate steps and uneven

---

[7] The ALJ cited to the physical evaluation form Dr. Calderon completed in reference to Dr. Carillo's opinions. (*See* AR at 1344.) That form contained little information, as Dr. Calderon simply filled out a checkbox form, but did not include any narrative discussion. (*See id.* at 280-83.) Dr. Calderon's examination notes appear elsewhere in the record. (*See id.* at 347.) The ALJ cited to this portion of the record earlier in his opinion, and thus the court infers that his discussion of Dr. Calderon's findings in relation to Dr. Carillo's opinions refers to both records. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that the court may draw "specific and legitimate inferences from the ALJ's opinion").

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 9

terrain, and had full range of motion in both legs. (*Id.* at 325.) Dr. Heilbrunn diagnosed Ms. Pressley with, among other things, "[b]ilateral knee osteoarthritis and subpatellar crepitus." (*Id.* at 328.) In his functional assessment, Dr. Heilbrunn stated that Ms. Pressley had "adequate balance on either leg." (*Id.*) He noted that she does not use or need an assistive device for standing or walking, and "could be expected to walk or stand for at least 30 minutes uninterrupted, and for a total of [five to six] out of [eight] hours," which "correlate[ed] to overweight [sic], lower extremity venous insufficiency, bilateral knee osteoarthritis, and lumbar strain/degenerative joint disease."[8] (*Id.*)

Dr. Marshall examined Ms. Pressley on January 11, 2014. (*Id.* at 1820.) Dr. Marshall reported that Ms. Pressley "walked to the examination room without difficulty, [sat] without difficulty," and could "get on and off the examination table without difficulty." (*Id.* at 1821.) Dr. Marshall also noted, however, that Ms. Pressley "was very unsteady with tandem gait," and her range of motion was limited to 90 degrees with flexion. (*Id.* at 1822.) Based on these findings, Dr. Marshall concluded that Ms. Pressley could stand and/or walk for a maximum of six hours, lift 50 pounds occasionally and 25 pounds frequently, and frequently engage in postural activities. (*Id.* at 1823.)

The ALJ's determination that Dr. Carillo's opinion was contradicted by these findings from Drs. Calderon, Heilbrunn, and Marshall is a reasonable interpretation of the

---

[8] The ALJ elsewhere determined that Dr. Heilbrunn's mention of Ms. Pressley's ability to stand and/or walk in 30 minute increments was not "tantamount to a restriction as Dr. Heilbrunn did not indicate the most [Ms. Pressley] could do; rather [sic] he opined as to the 'least' [Ms. Pressley] could do. Yet an RFC assessment is intended to capture the most that a claimant can do." (*Id.* at 1343.) Ms. Pressley does not challenge this finding. (*See* Pl. Op. Br. at 1.)

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 10

evidence, which the court will not disturb. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). Each doctor observed that Ms. Pressley had little difficulty walking or standing, and each determined that she had less work restrictions than Dr. Carillo found. (*See* AR at 282, 328, 347, 1823.) This finding was therefore a specific and legitimate reason to discount Dr. Carillo's 2012 opinion.

3. <u>Contradiction with Daily Activities</u>

The ALJ's third reason for rejecting Dr. Carillo's 2012 opinion is less convincing. ALJ Kennedy referred to only two records to suggest that Ms. Pressley was engaging in physical activities beyond what Dr. Carillo claimed she could do, but neither establishes the ALJ's finding. An ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

ALJ Kennedy first noted that in September 2012, Ms. Pressley presented Dr. Carillo with paperwork releasing her to participate in "strength training." (AR at 1344 (citing *id.* at 1860).) The ALJ then mentioned that the record was "silent regarding whether or not the paperwork was completed." (*See id.* at 1344.) The ALJ pointed out, however, that a record from March 2013 reported that Ms. Pressley "was excited about her new health regimine [sic], she started going to gym [sic], lifting weights, doing cardio and eating healthy foods." (*Id.* (citing *id.* at 1842).)

The ALJ engaged in too much speculation connecting these two records, and was too vague in explaining how they contradicted Dr. Carillo's 2012 opinions. The record is not only silent about whether Dr. Carillo completed the strength training paperwork, but also about whether Ms. Pressley ever participated in that strength training. At most, other records not referenced by the ALJ indicate that Ms. Pressley joined a gym in March 2013 and reported exercising regularly over the next several months. (*See id.* at 1793-97.) But she began to struggle with motivation in June 2013, and stopped exercising by August 2013. (*See id.* at 1789-91.) There is no mention of what that exercise involved, nor did the ALJ actually reference these records. Thus, the ALJ's citation to two records that vaguely allude to exercise, without any detail as to how these contradict Dr. Carillo's 2012 opinion, was not a specific and legitimate reason to reject that opinion.

4. Harmless Error

Although the ALJ included erroneous reasons for rejecting Dr. Carillo's 2012 opinion, Ms. Pressley has failed to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ gave at least one valid reason for rejecting Dr. Carillo's 2012 opinion, so his inclusion of erroneous reasons was inconsequential and therefore harmless.

## C. Evaluation of Ms. Pressley's June 8, 2015 Hearing Testimony

Ms. Pressley argues that the ALJ erred in rejecting her latest testimony because he only recounted those parts of her testimony relating to her back and right foot in his decision, and did not explicitly discuss her testimony about her knee issues. (Pl. Op. Br. at 12; Reply Br. (Dkt. # 13) at 7-8.) If a claimant establishes that she has an impairment that could reasonably be expected to cause particular symptoms, then, absent a finding of malingering, the ALJ must give clear and convincing reasons to reject the claimant's testimony on the severity of her symptoms. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

In his most recent decision, ALJ Kennedy found that Ms. Pressley's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely credible."[9] (AR at 1339.) With respect to Ms. Pressley's allegations regarding her physical symptoms, ALJ Kennedy adopted and incorporated the discussion from his August 2012 decision, which the court previously upheld. (*See id.* at 1339, 1491-95.) The ALJ reiterated that Ms. Pressley's claims were inconsistent with objective findings, contradicted by the medical evidence, and contradicted by Ms. Pressley's daily activities. (*Id.* at 1339-42.)

---

[9] After the ALJ's decisions in this case, the Social Security Administration issued newly revised Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (2017), which "eliminat[ed] the use of the term 'credibility' from our sub-regulatory policy" and "clarif[ied] that subjective symptom testimony is not an examination of an individual's character." *Id.* at *2. This change does not alter the present analysis, however, because even assuming SSR 16-3p applies retroactively, the Ninth Circuit has held that SSR 16-3p is consistent with existing Ninth Circuit precedent on evaluation of a claimant's testimony. *See Trevizo*, 871 F.3d at 678 n.5.

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS - 13

As the court decided in its previous decision, the ALJ gave adequate reasons for rejecting Ms. Pressley's testimony. (*See id.* at 1491-95.) Inconsistency with objective findings, medical evidence, and a claimant's daily activities are all clear and convincing reasons to reject a claimant's symptom testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Nothing in Ms. Pressley's 2015 testimony invalidated the ALJ's reasoning, and thus the ALJ did not err in rejecting Ms. Pressley's testimony.

D.  **Evaluation of Ms. Pressley's RFC and Ability to Perform Past Work**

Ms. Pressley's argument on this last issue depends entirely on the court having found in her favor on at least one of the previous issues. (*See* Pl. Op. Br. at 13.) Because the court found against her on all of those issues, the court must conclude that the ALJ did not err in assessing Ms. Pressley's RFC and in finding that she could perform past relevant work.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED with prejudice.

DATED this 16th day of July, 2018.

JAMES L. ROBART
United States District Judge